# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| PBN PHARMA, LLC, <br> AHNAL PUROHIT and <br> HARRY C. BOGHIGIAN, | ) <br> ) <br> ) <br> ) | |
| Plaintiffs, | ) <br> ) | Case No. 14-cv-6865 |
| v. | ) <br> ) | Judge Sharon Johnson Coleman |
| SARFARAZ K. NIAZI, | ) <br> ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs PBN Pharma, LLC ("PBN Pharma"), Ahnal Purohit and Harry C. Boghigian (together "plaintiffs") filed a five-count complaint against Sarfaraz K. Niazi ("Niazi") asserting claims for declaratory judgment of non-infringement, breach of contract, breach of fiduciary duty, fraud in the assignment of patent and patent applications, and fraud in the purposeful failure to prosecute patent applications. Niazi moved to dismiss all claims pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction. For the reasons stated below, Niazi's motion to dismiss is denied.

**Background**

The following facts are taken from the complaint and accepted as true for the purposes of ruling on the instant motion. PBN Pharma is Chicago-based research and development company of new and unique therapeutic medical treatments including skin care, pain management and weight management. The treatments, also known as pharmacological applications, are based on existing patents and patent applications and developed for sale or licensing in the commercial market. PBN Pharma was formed as a partnership in 2003, between Purohit, Boghigian and

defendant Niazi. Purohit was responsible for the company's marketing functions and Boghigian performed sales operations. Niazi contributed his technical background in pharmaceutical formulation and manufacturing, as well as his patent expertise as a registered patent agent.

Pursuant to the operating agreement, the partners were not required to make any capital contributions to PBN Pharma, except that Niazi was required to assign certain patents and patent applications to the partnership. The partnership agreed that they would attempt to sell and/or license most of the patents and patent applications and maintain the dermatologic related patents and patent applications for PBN Pharma to commercialize. Niazi would receive compensation for the assignment of his patents and patent applications only if PBN Pharma subsequently sold any of the patents or patent applications. The agreement provided that no later than April 6, 2004, Niazi was to assign his "entire right, title and interest in and to the patents, patent applications and patent disclosures awaiting final determination." On that date, Niazi executed documents assigning thirteen patents and twelve patent applications to PBN Pharma. The assignments stated that Niazi is the "sole owner" of the patent and patent applications and assigns all of his rights, titles and interest.

PBN Pharma proceeded to commercialize some of the patent and patent applications, namely U.S. Patent No. 6,419,963 ("the '963 patent"). It developed and marketed a line of products based on the '963 patent under the name NapiNol®. PBN Pharma also researched and developed a topical preparation based on the '963 patent called Boo Boos Be Gone.

On November 3, 2013, Niazi withdrew from the PBN Pharma partnership. Under the terms of the operating agreement, the patents and patent applications he assigned to PBN Pharma would remain with the company. At some point after Niazi left the company, plaintiffs discovered that on April 24, 2002, Niazi assigned to Novel Pharma Inc. ("Novel") a number of

patents and patent applications which were to have been assigned to PBN Pharma in 2004, including the '963 patent. Niazi is the sole owner of Novel. Plaintiffs also discovered that on April 13, 2010, Niazi signed an agreement assigning the '963 patent from himself to PBN Pharma. At that time, PBN Pharma was using the patent in its manufacture of NapiNol®.

Separately, as a registered patent agent, Niazi agreed to prosecute or facilitate the prosecution of the twelve patent applications that were to have been assigned to PBN Pharma, on PBN Pharma's behalf. Niazi allowed each patent application to become abandoned.

**Legal Standard**

A court must dismiss any action which lacks subject matter jurisdiction. The party asserting jurisdiction has the burden of establishing it under Rule 12(b)(1). *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443-44 (7th Cir. 2009). "On a motion to dismiss for lack of subject matter jurisdiction, the court is not bound to accept the truth of the allegations in the complaint, but may look beyond the complaint and the pleadings to evidence that calls the court's jurisdiction into doubt." *Bastien v. AT & T Wireless Servs., Inc.*, 205 F.3d 983, 990 (7th Cir. 2000).

**Discussion**

*1. Declaratory Judgment Claim*

Niazi moves to dismiss Count One for lack of subject matter jurisdiction, arguing that no case or controversy exists as to the '963 patent named in that claim. He argues that plaintiffs have not plead facts from which the Court could infer that they have any objectively reasonable apprehension that he will initiate litigation if they continue to use the '963 patent. Niazi also claims that plaintiffs fail to plead that he or Novel has threatened litigation. Niazi further points out that neither he nor Novel has challenged PBN Pharma's use of the '963 patent. Niazi's

arguments fail for several reasons.

Niazi applies the wrong legal standard to evaluate when an actual controversy exists in the patent context. He relies on the Federal Circuit's reasonable-apprehension-of suit test which was rejected by the Supreme Court. *See SanDisk Corp. v. STMicroelectronics, Inc.*, 480 F.3d 1372, 1380 (Fed. Cir. 2007). "The Supreme Court's opinion in *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 S. Ct. 764, 166 L.Ed.2d 604 (2007) represents a rejection of our reasonable apprehension of suit test." *Id.* The standard articulated by the Supreme Court is "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune*, 549 U.S. at 127, 127 S. Ct. 771. Quoting *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240-241, 57 S. Ct. 461 (1937), the Supreme Court held that the dispute at issue must be "'definite and concrete, touching the legal relations of parties having adverse legal interests"; and that it be "real and substantial" and "admi[t] of specific relief through a decree of a conclusive character.'" *MedImmune*, 549 U.S. at 127, 127 S. Ct. 771. Accordingly, the case or controversy requirement "may be met where the patentee takes a position that puts the declaratory judgment plaintiff in a position of either pursuing arguably illegal behavior or abandoning that which he claims a right to do." *SanDisk Corp.*, 480 F.3d at 1381.

Here, plaintiffs allege that PBN Pharma proceeded to commercialize dermatologic products based on the '963 patent under the belief that it had the entire right, title and interest in the patent. Plaintiffs further allege that they recently discovered that Niazi had assigned the entire right, title and interest in the '963 patent to Novel, two years before his assignment of the patent to PBN Pharma, thus creating a "justiciable controversy … between Plaintiffs and Niazi

4

regarding the non-infringement of the '963 patent." (Dkt. # 1 ¶ 97.) Plaintiffs claim that they are "in apprehension of being accused of patent infringement by Niazi and/or Novel as the current owner and/or assignee of the '963 patent," and accordingly seek a declaration that they have not infringed and are not infringing any claim of the '963 patent. (Dkt. # 1 ¶ 88.) The Court finds that, as set forth above, Niazi's conflicting record of assigning and reassigning the '963 patent calls into question plaintiffs claim to use the patent in a non-infringing manner and therefore a case or controversy exists. Niazi's claim that he has not threatened litigation is of no consequence as a plaintiff need not subject itself to a lawsuit or otherwise suffer damage before seeking a declaration of its legal rights. *MedImmune, Inc.*, 549 U.S. at 133-34, 127 S. Ct. at 775; *see also Goodyear Tire & Rubber, Co. v. Releasomers, Inc.*, 824 F.2d 953, 956 (Fed. Cir. 1987) (declaratory judgment should be used "to provide the allegedly infringing party relief from uncertainty and delay regarding its legal rights"). Further, his argument that any controversy is mooted by his execution of the September 19, 2014, document assigning the '963 patent to PBN Pharma for a third time is not well taken. The Court evaluates the existence of jurisdiction on the basis of the facts existing at the time plaintiffs filed the complaint. *GAF Bldg. Materials Corp. v. Elk Corp.*, 90 F.3d 479, 483 (Fed. Cir. 1996). The document referenced above was executed after the complaint was filed. Indeed, just prior to filing the complaint, plaintiffs asked Niazi for documentation reflecting any ownership he had in the patent which he claimed to have assigned to PBN Pharma. Niazi did not respond with additional information about the assignments or proof of ownership. (Dkt. # 17, p. 5-6 and referenced exhibits.)

      For all these reasons, the Court denies Niazi's motion to dismiss for lack of jurisdiction.

2. *State Law Claims*

      Plaintiffs assert claims under state law in Counts Two through Five. Count Two sets

forth a claim for breach of contract where Niazi assigned his patent and patent applications knowing that he held no rights or title in them. Count Three asserts that Niazi breached his fiduciary duty to PBN Pharma by knowingly assigning patents and patent applications he did not own, and causing patent applications to become abandoned. In Count Four, plaintiffs claim fraud in the assignment of Niazi's patents and patent applications to PBN Pharma. Finally, plaintiffs set forth a claim of fraud in Count Five for his purposeful failure to prosecute patent applications. Niazi argues that since diversity jurisdiction does not exist here, all of these claims should be dismissed for lack of jurisdiction under 28 U.S.C. § 1338(a) because they do not arise under patent law.

This Court has jurisdiction under § 1338(a) in any case "in which a well-pleaded complaint establishes either that federal patent law creates the cause of action or that the plaintiff's right to relief necessarily depends on the resolution of a substantial question of federal patent law, in that patent law is a necessary element of the well-pleaded claims." *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 808-09, 108 S.Ct. 2166, 100 L.Ed.2d 811 (1988). In making this determination the Court is limited to an analysis of plaintiffs' complaint. *Landmark Screens LLC v. Morgan, Lewis & Bockius, LLP*, 676 F.3d 1354, 1360 (Fed. Cir. 2012). The first part of the *Christianson* test is not implicated here because plaintiffs' causes of action are created by state law. Accordingly, the Court will determine whether each claim presents a substantial question of patent law.

The Court finds that plaintiffs' breach of contract claim does not necessarily depend on the resolution of a question of patent law. Plaintiffs allege that Niazi breached his obligation in the operating agreement by assigning his patent and patent applications knowing that he did not hold their rights or title. Resolution of whether Niazi failed to properly assign patent and patent

applications involves ownership and contract issues governed by state law, and not any substantial issue of patent law. *See e.g., Bd. of Regents, Univ. of Tex. Sys. v. Nippon Tel. & Tel. Corp.*, 414 F.3d 1358, 1364-65 (7th Cir. 2005) (collecting cases) (citing *Jim Arnold Corp. v. Hydrotech Sys., Inc.*, 109 F.3d 1567, 1574 (Fed. Cir. 1997) (holding that a complaint alleging breach of a patent assignment agreement does not state a claim arising under the patent laws even though a consequence of finding such a breach may lead to allegations of infringement). Accordingly, this Court does not have jurisdiction over plaintiffs' breach of contract claim under § 1338(a). However, the Court will assert supplemental jurisdiction under 28 U.S.C. § 1367 because plaintiffs' breach claim is so related to their declaratory judgment claim that "they form part of the same case or controversy under Article III." Each claim involves the same issues of ownership arising from Niazi's conflicting record of assigning and reassigning certain patents and patent applications. Niazi's motion to dismiss the breach of contract claim is denied.

On the other hand, plaintiffs' fraud claims, in part, involve substantial issues of patent law. Under Illinois law, the elements of fraud are (1) a false statement of material fact; (2) the defendant's knowledge that the statement was false; (3) intent that the statement induce the plaintiff to act; (4) the plaintiff's reliance upon the truth of the statement; and (5) damages. *Connick v. Suzuki Motor Co., Ltd.*, 174 Ill.2d 482, 496, 675 N.E.2d 584, 221 Ill. Dec. 389 (1996). Plaintiffs have alleged that Niazi deceived them by knowingly causing certain patent applications to become abandoned and failing to prosecute others, leading plaintiffs to rely on his false affirmations. (Dkt. # 1 ¶¶ 57-72; 133-143; 155-168.) Because the underlying issue is plaintiffs ability to achieve patent protection absent Niazi's alleged conduct in either causing the applications to become abandoned or failing to prosecute them, these fraud claims present a substantial question of patent law conferring jurisdiction to this Court. *See, e.g., Landmark*

*Screens*, 676 F.3d at 1361 (patentability "invokes patent law sufficiently to sustain district court jurisdiction under 28 U.S.C. § 1338(a)). This ruling extends only to those allegations in Count 4 that relate to the '773 application and the '445 application, and in full to Count 5. As set forth above, the Court asserts supplemental jurisdiction over the remaining allegations involving assignment and ownership issues.

A similar analysis applies to plaintiffs' claim for breach of fiduciary duty. To prove their claim, plaintiffs must establish a fiduciary duty on the part of Niazi, breach of that duty and damages proximately caused by the breach. *DOD Techs. v. Mesirow Ins. Servs., Inc.*, 381 Ill. App. 3d 1042, 1046, 887 N.E.2d 1, 320 Ill. Dec. 221 (Ill. App. Ct. 2008). Plaintiffs alleged that Niazi breached his fiduciary duty in part by causing the patent applications to become abandoned. Thus, plaintiffs would have to show that Niazi's conduct prevented them from obtaining patent rights, thereby invoking patent law sufficient to sustain jurisdiction. For the reasons above, this ruling applies only to those allegations in Count 3 that relate to abandonment; the Court asserts supplemental jurisdiction over the remainder.

**Conclusion**

For the foregoing reasons, defendant's motion to dismiss [14] is denied in its entirety.

SO ORDERED.

SHARON JOHNSON COLEMAN
United States District Judge

DATED: September 1, 2015